NATHAN B. ROSS *v.* J. W. HAMILTON ET AL.

Special Term at Brattleboro, February, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 12, 1921.

*Statute of Frauds—Sale of Standing Timber—Memorandum Signed by Vendor Only—Vendee Acting Under Memorandum Bound by It—Title to Trees Cut Vests in Vendee—Unexecuted Contract Operates as License—Premature Admission of Evidence—Breach of Contract—Right of Vendor to Resell Remaining Property—Resale Not a Rescission of Contract.*

1.  In an action on a contract for the sale of certain standing timber, a writing signed by the plaintiff but not by the defendants, whereby he sold them the timber and gave them six months in which to remove it and under which they entered upon the land and cut all the timber involved in the suit and removed some and left the rest, was admissible, as against the statute of frauds, since the defendants by entering and acting under the writing adopted it and became bound by it as if they had signed it.

2.  So fast as the defendants, acting under the writing, severed the trees from the freehold, the title to the same vested in them, and they became liable to pay the contract price.

3.  Until the defendants acted under the writing, it operated as a mere license to enter to cut and remove the timber.

4.  The defendants were not harmed by the admission of the writing
    in evidence, as against the statute of frauds, before the recep-
    tion of evidence showing that it had been taken out of the
    statute.
5.  The defendants having broken the contract by failing to remove
    and pay for the timber within the time limited, the plaintiff
    could lawfully resell the severed timber remaining on the lot
    and sue for damages.
6.  Such resale by the plaintiff did not amount to a rescission of the
    contract, as the plaintiff acted in the resale, not for himself
    alone, but as the *quasi* agent or trustee for the defendants, in
    accordance with an implied term of the contract.

ACTION OF CONTRACT to recover damages for breach of agreement for sale and purchase of standing timber. Trial by jury at the June Term, 1920, Bennington County, *Wilson*, J., presiding. Verdict and judgment for the plaintiff. The defendants excepted. The opinion states the case.

*J. K. Batchelder* for the defendants.

*Orrin B. Hughes* for the plaintiff.

POWERS, J. This is an action of contract in the form of general assumpsit with a special complaint for damages for the breach of a contract for the purchase of certain standing timber and pulpwood. The answer contained a general denial and set up as defences the statute of frauds, and the fact that the plaintiff had taken possession of and sold the timber and pulpwood in question, after it had been cut by the defendants. A trial by jury resulted in a verdict for the plaintiff, and the defendants allege error.

To establish the contract relied upon, the plaintiff offered in evidence a writing dated August 22, 1918, signed by himself, but not by the defendants, by the terms of which he sold to them certain timber in Winhall at $6 per cord for the pulpwood and $15 per thousand feet for the timber, and, among other things, gave them six months in which to remove the timber. This contract evidenced the payment of $200 thereon, and provided that the balance should be paid when the timber left the woods.

The defendants objected to the admission of this writing on the ground that it purported to convey an interest in land, and, not being signed by the parties here to be charged, it was wholly

ineffective under G. L. 1876. The objection was overruled, the writing was admitted, and the defendants excepted.

There was evidence fairly and reasonably tending to show that the defendants, acting under this writing, entered upon the land referred to and cut all the timber involved in this suit, removed a part of it, and left the remainder on the lot, some in piles and some scattered about.

[1-3] In these circumstances, the writing was admissible. Though such contracts are for the sale of an interest in land and required by the statute of frauds to be in writing and signed by the party to be charged (*Buck* v. *Pickwell*, 27 Vt. 157), and though this writing could not, so long as it remained executory, be made available in any way as a contract, it was predicated upon a valuable consideration, and as fast as and to the extent that it became executed by the defendants actually severing the trees from the freehold, it became binding and enforceable. The title to the trees so cut vested in the defendants, and they became liable to pay the contract price. *Yale* v. *Seeley,* 15 Vt. 221; *Buck* v. *Pickwell, supra; Cady* v. *Sanford,* 53 Vt. 632. Until the defendants so proceeded under it, the writing operated as a mere license to enter to cut and remove the timber. Their liability to pay as aforesaid is unaffected by the fact that they did not sign the writing; for, by entering and acting under it as they did, they adopted it and became bound by it as if they had signed it. *Patchin* v. *Swift,* 21 Vt. 292.

[4] The defendants suggest that the evidence in regard to their cutting had not been received when the writing was admitted, but, if this was so, they were not harmed by its premature admission, and their exception is unavailing.

[5] The defendants moved for a verdict and saved an exception when their motion was overruled. Though stated in different ways, the grounds of their motion were that the resale of the property by the plaintiff was wholly illegal, and amounted in law to a rescission of the contract and a release of the defendants therefrom. They also excepted to the court's ruling that the defendants were liable for the lumber at the agreed price, less what should be allowed them. When the defendants failed to pay for and remove the wood and timber within the time limited, they broke the contract. The requirement was that they should pay when the stuff was drawn off, and it was to be drawn off within the six months. So their failure was not only as to re-

moval, but also as to payment. This was an essential term of their engagement. In these circumstances, the plaintiff was not obliged to stand by while the property was utterly wasted, and take his chances of getting his damages out of the defendants. 2 Kent, *504. He could lawfully resell the property remaining on the lot and bring this action for damages. This rule is fully and firmly established. *Darby* v. *Hall,* 3 Pennewill (Del.) 25, 50 Atl. 64; *McLean* v. *Richardson,* 127 Mass. 339; *Grist* v. *Williams,* 111 N. C. 53, 15 S. E. 889, 32 A. S. R. 782, and note; *Atwood* v. *Lucas,* 53 Me. 508, 89 A. D. 713; *General Electric Co.* v. *National Contracting Co.,* 178 N. Y. 369, 70 N. E. 928; *Smith & Son* v. *Bloom,* 159 Ia. 592, 141 N. W. 32. It was said in *Putnam* v. *Glidden,* 159 Mass. 47, 34 N. E. 81, 38 A. S. R. 394, quoting from *Dustan* v. *McAndrews,* 44 N. Y. 78, that, when a purchaser declines to receive property sold him, the vendor has his choice of three remedies: (1) He may store or retain the property for the vendee, and sue him for the entire purchase price; (2) he may sell the property acting as the agent for this purpose of the vendee and recover the difference between the contract price and the price obtained on such resale; or (3) he may keep the property as his own, and recover the difference between the market price at the time and place of delivery and the contract price. This is the doctrine of *Rosenbaum* v. *Weden, Johnson & Co.,* 18 Gratt. (Va.) 785, 98 A. D. 737, wherein the matter is fully discussed, and of *Cook* v. *Brandeis,* 3 Met. (Ky.) 555, wherein it is said that "these well-settled rules are recognized by all the authorities, English and American."

Our own cases are in harmony with these holdings. *Jones* v. *Marsh,* 22 Vt. 144; *Phelps* v. *Hubbard,* 51 Vt. 489. In the latter case, the plaintiff, by a single contract, sold the defendant three lots of tobacco, two of which were delivered and partly paid for. The third lot was packed ready for delivery, but the defendant wrongfully refused to take it and pay for it. After keeping it a reasonable time, the plaintiff resold it and brought suit for damages. It was held that the contract was entire, that the plaintiff had proceeded lawfully, and that he could recover. That decision is directly in point here, and is full authority for the plaintiff.

[6] The defendants' contention that the resale amounted to and was a rescission cannot be sustained. It was not, *per se,* evidence of a rescission even. *Grist* v. *Williams, supra.* That

it was not, in law, a rescission is shown by *Jones* v. *Marsh, supra;* for there the purchaser was not allowed to recover a partial payment he had made, which he could have done had the resale amounted to a rescission of the contract. *Wood* v. *James,* 93 Vt. 36, 106 Atl. 566. By his conduct the plaintiff affirmed the contract and treated it as still in force. True it is, as we have seen, that the title to the timber vested in the defendants as fast as it was cut, subject, of course, to the rights of the plaintiff as an unpaid vendor, and true it is that the title remained in the defendants unforfeited by their failure to remove it within the time limited in the contract (*DeGoosh* v. *Baldwin,* 85 Vt. 312, 82 Atl. 182; *Deerfield Lumber Co.* v. *Lyman,* 89 Vt. 201, 94 Atl. 837) ; but the plaintiff did not sell the property as his own, but as that of the defendants. He acted, not for himself alone, but as their *quasi* agent or trustee (*Grist* v. *Williams, supra; Sands* v. *Taylor,* 5 Johns. [N. Y.] 395, 4 A. D. 374), and in all he did he acted rightfully and in accordance with an implied term of the contract. Some courts hold that a notice to the purchaser, either of an intention to sell or of the resale, is a prerequisite to the right; but no notice was given in *Phelps* v. *Hubbard, supra,* and by the weight of authority none is required. 24 R. C. L. 111; Tiedeman, Sales, § 334; 2 Benj., Sales, 1120 N. S.; Williston, Sales, §§ 548, 549. Whether such a notice is required to make the resale price binding upon the original purchaser is not important here, as the case, as we shall now see, was submitted to the jury on the theory that it was not so binding.

The court instructed the jury that the plaintiff was entitled to recover as damages the difference, if any, between the contract price and the amount he received or ought to have received under the resale. To this the defendants excepted, but they did not attack the resale on any ground other than that it was wholly unlawful and amounted to a rescission.

For the reasons already given, these grounds were untenable, and the exception is without merit.

*Affirmed.*