## MARY S. ECTOR v. R. E. OSBORNE ET AL.

### (Filed 2 June, 1920.)

**1. Usury—Waiver—Statutes.**

Statutes prohibiting charging usury or an illegal rate of interest are enacted for the benefit of the borrower who may waive his right thereunder. Rev., sec, 1591.

**2. Same—Judgment—Consent.**

By consent judgment entered in an action upon a note, wherein usury was set up by the defendant, and the parties have agreed upon a compromise in a certain sum, signed and entered by the court, the defendant waives his right under our usury law, and may not thereafter maintain the defense that a note he had given the plaintiff, in the amount of the judgment, was tainted with the usury of the first transaction.

**3. Usury—Definition.**

There are four requisites to an usurious transaction: a loan express or implied; an understanding between the parties that the money lent shall be returned; there shall be a greater rate of interest than allowed by law paid or agreed to be paid, and a corrupt intent to charge the usurious rate, such intent consisting in knowingly charging or receiving excessive interest with the knowledge that it is prohibited by law; and it appearing in this case that the plaintiff, though induced by defendant to make the loan under a pretext of friendship, knowingly accepted the latter's note with usurious interest included, the transaction comes within the definition of usury.

CLARK, C. J., dissenting; WALKER, J., concurring in the dissenting opinion.

APPEAL by defendants from *Bryson, J.,* at the January Term, 1920, of HAYWOOD.

This is an action on a note for $500 executed on 9 May, 1916, by the defendant Osborne to the defendant Abel, and indorsed by Abel to the plaintiff, to which the plaintiff interposes the plea of usury, alleging that the note was given for the balance of a loan of $1,000 on which usurious interest was charged, and that if the payments made are applied to the loan without interest nothing is due the plaintiff.

The plaintiff in her testimony gave the following account of the original loan: "I loaned Mr. Osborne, on 5 March, 1908, $1,000. Mr. Osborne was connected with the bank down here and he was building a handsome home at Hazelwood, and he came to me a time or two—he knew I had a little money in the bank—and under the pretense of friendship told me he thought I might make a little more than I was in the bank, and he needed some money, and under this pretense I loaned him $1,000. At his suggestion a note was written and given to me for $1,080. Let him have $1,000. The $80 represented the interest for the following year; Mr. Osborne suggested that that be put in. Mr. Osborne only got $1,000."

The plaintiff admitted that the defendant paid her interest on the loan for the years 1908 to 1913, inclusive, amounting to $592, and offered evidence that upon his failure to make further payment she brought an action on the note for $1,080, to which the defendant made the same plea of usury as in this action; that this action was by agreement settled and compromised by the elimination of usurious interest. and paying six per cent on the loan; that pursuant to the settlement the defendant paid the plaintiff $500, and executed the note sued on in this action, and another note for $100, and that the settlement was approved by the judgment in the former action, which is as follows:

"This cause coming on to be heard at May Term, 1916, of the Superior Court of Haywood County, before his Honor, B. F. Long, judge presiding, and holding said term of court; and it appearing to the court, and the court finding as a fact, that the plaintiff and defendants have settled the debt sued upon and have agreed that the costs be taxed against the defendant, R. E. Osborne;

"It is therefore considered, ordered, and adjudged that the matters and things between the plaintiff and the defendants are compromised, and that R. E. Osborne, one of the defendants, pay the cost of the action to be taxed by the clerk.　　　　　　　　　　　　　B. F. LONG,
　　　　　　　　　　　　　　　　　　　　　　　　Judge Presiding."

This evidence was not contradicted by the defendant. The defendant filed four requests for instructions to the jury, all being predicated upon the idea that the evidence and admissions of the plaintiff showed that the note for $500 sued on in this action was a part of the original loan of $1,000, which was usurious, and therefore did not bear interest, and that as the payments made amounted to $1,092 there was nothing due the plaintiff.

These instructions were refused, and the defendant excepted, and assigned the same as error in the following words:

"6. That his Honor erred in not giving the special instructions to the jury as tendered by the defendants, as shown by defendant's exception No. 7."

There is no exception to the charge. The jury returned the following verdict:

"1. Does the note sued on in this action represent in whole or in part usurious interest charged by plaintiff and paid by defendant on the note for $1,080? Answer: 'No.'

"2. If so, to what extent? Answer:

"3. What amount, if any, is the plaintiff entitled to recover of the defendant? Answer: '$500, with interest from date of note, 9 May, 1916, at rate of 6 per cent per annum.'"

Judgment upon the verdict in favor of the plaintiff, and the defendants appealed.

*W. J. Hannah and John M. Queen for plaintiff.*
*Morgan & Ward for defendants.*

ALLEN, J. There are four requisites of a usurious transaction:
"(1) There must be a loan, express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) that for such loan a greater rate of interest than is allowed by law shall be paid, or agreed to be paid, as the case may be; and (4) there must exist a corrupt intent to take more than the legal rate for the use of the money loaned." *Doster v. English,* 152 N. C., 341.

"The corrupt intent mentioned in the books consists in the charging or receiving the excessive interest with the knowledge that it is prohibited by law, and the purpose to violate it. Our statute makes it usury if the interest is *knowingly* charged or received at the unlawful rate." *MacRackan v. Bank,* 164 N. C., 26.

Applying these principles, it is clear that the original loan of $1,000 was usurious, and the legal effect of the usury could not be avoided by the execution of a separate note for the interest, or by giving new notes, in renewal of the old. *Ervin v. Bank,* 161 N. C., 47.

A borrower is not, however, compelled to plead usury, and as the defense is personal to him it may be waived.

A case in point is *Berk v. Bank,* 161 N. C., 206, from which we quote at length, because the principle declared covers the question involved in this appeal, and the principle cannot be understood without a statement of the facts.

The Court says in that case: "We find that the main exception relates to the ruling of the court upon the question of usury. Plaintiffs made to J. L. Armfield on 16 May, 1906, their note for $5,500, secured by a mortgage on the property of the partnership, which was duly executed by them and their wives. It appears that they only received $4,500, and, as they alleged, the balance, or $1,000, was usurious interest. While the reference did not find explicitly that the $1,000 was illegal interest, he did find that the plaintiffs came to a settlement with the defendant, or the defendant with them, and the negotiations resulted in an agreement of compromise, which was reduced to writing and the substance of which is that J. L. Armfield agreed to pay and the plaintiffs to receive the sum of $600, and the latter, in consideration of the said sum, released Armfield from any and all liability for and on account of the said usurious transaction, and it is so denominated in the release, being called by circumlocution 'all amounts paid in excess of the legal

rate of interest for any and all money heretofore loaned to (plaintiffs) by J. L. Armfield,' and 'the said excess being $600, and the payment of the same, it is agreed, shall be in full settlement of all liability therefor, and of any and all causes of action which can arise therefrom.' This was undoubtedly an admission of the defendant that the transaction in which he took the note for $5,500 was tainted with usury, and that he was in danger of losing, not only his legal interest on the note, but double the amount in interest which had been paid to him by his debtors. He therefore very prudently and wisely set about to make terms with the plaintiffs, and to relieve himself of this statutory liability, by paying $600 in compromise and adjustment of the whole amount that might have been exacted. 'The statutes of usury being enacted for the benefit of the borrower, he is at liberty to waive his right to claim such benefit and pay his usurious debt, if he sees fit to do so. It is, therefore, held that when the debtor becomes a party to a general settlement of preceding usurious transactions, made fairly and without circumstances of imposition, his recognition of the amount agreed to be due as a new obligation will preclude his setting up the old usury in defense of the new debt. This rule is not held to apply, however, unless it is clear that the debtor has fully accepted the settlement as a just debt separate and distinct from the preceding usurious obligations.' 39 Cyc., 1024. The $600 thus paid to the plaintiffs became their money, and was in no way involved in the account. Its payment in final settlement of the usurious transaction simply purged it of the taint, or eliminated the usurious feature, and reduced the principal to $4,500. That was the new principal, and bore legal interest."

If, as was held, a compromise and settlement followed by the execution of a release purges the transaction of usury, surely the same effect should be given to a compromise and settlement, in which the usury is eliminated, and which is approved by a judgment of the court.

It follows, therefore, that there was no error in refusing to give the prayers for instruction.

We have considered the exception of the defendant, although it is not assigned as error according to our rules, which require the error complained of to be "definitely and clearly presented, and *the Court not compelled to go beyond the assignment itself to learn what the question is. The assignment must be so specific that the Court is given some real aid,* and a voyage of discovery through an often voluminous record not rendered necessary." *Thompson v. R. R.,* 147 N. C., 413, approved in *Porter v. Lumber Co.,* 164 N. C., 396.

If there is an exception to an instruction refused or given, or to the admission or exclusion of evidence, the instruction or evidence should be set out in the assignment, and upon failure to do so the Court may disregard the assignment.

ECTOR v. OSBORNE.

As late as *Wheeler v. Cole,* 164 N. C., 380, approved in *Carter v. Reaves,* 167 N. C., 132, the Court said: "It would not consider exceptions not set out in compliance with the plain requirements of our rules as construed by this Court."

There are several exceptions in the record, which we need not consider, as we rest our decision on facts that are not in dispute.

No error.

CLARK, C. J., dissenting: The defendant, R. E. Osborne, the maker of the note sued on, pleaded usury, and alleged that the note sued on was part of and grew out of a loan of $1,000 made by the plaintiff to him on 5 March, 1908, and that said loan was made on the express understanding and agreement with the plaintiff that the said Osborne pay 8 per cent interest on said loan, and at the time he received from the plaintiff $1,000 in cash and executed his note to the plaintiff in the sum of $1,080. The said $80 was embraced in the said note, being the interest thereon for one year at 8 per cent, which was added to the principal indebtedness. He further averred that he had paid the plaintiff 8 per cent interest on the said loan beginning 5 March, 1908, for a period of 6 years. And also paid the same rate of interest on the $80 representing the first year's interest, making the interest for each of said years $86.40—a total of $598.40 paid to the plaintiff by reason of said usurious contract. The defendant Osborne further averred that he paid the plaintiff by reason of said loan the further sum of $500 in cash, on 9 May, 1916, making a total of $1,098 paid by him on said loan of $1,000.

It appears on the record, and was admitted by all parties, that prior to 9 May, 1916, the plaintiff sued the defendant Osborne and his sureties on the note of $1,080, dated 5 May, 1908, and that after deducting the interest that had been paid the defendant Osborne filed an answer pleading the statute forbidding the collection of more than 6 per cent on loans, and at May Term, 1916, said suit was compromised, and by agreement judgment was signed dismissing the suit. It is admitted by both plaintiff and defendant that at the time of the said consent judgment, 9 May, 1916, the defendant Osborne paid the plaintiff the further sum of $500, which was in addition to the annual payments of interest theretofore made by him to the plaintiff at the aforesaid rate of 8 per cent for seven years, and that at the time of said consent judgment the defendant Osborne executed to the plaintiff the note sued on in this action, endorsed by J. F. Abel, and that he also executed to the plaintiff his note in the sum of $100 without any endorsement.

At the time of the payment of $500 in cash, on 9 May, 1916, and the execution of the said two notes for $500 and $100, there was no con-

sideration passed between the parties, but they were renewal notes of the original loan of $1,000 of 5 March, 1908, less payments made. The defendant Osborne in his answer averred that by reason of said contract, knowingly made by the plaintiff to charge him 8 per cent interest on said $1,000 loan made on 5 March, 1908, in law the said loan never bore any interest, and that the different payments made by him by reason of said loan should be, and by law were, applied on the principal indebtedness of $1,000, and that said payments, together with the $500 cash paid on 9 May, 1916, overpaid the plaintiff, and the note now sued on for $500 represents in its entirety unlawful and usurious interest charged and exacted of him by the plaintiff, and that the same is void. The plaintiff, having already more than received her money back, cannot in law correct the note now sued on.

There is no dispute about the above facts, which are set up in the answer and admitted by the reply, which relied upon the statute of limitations, Rev., 396 (2), in bar of the defendant's right to plead the statute.

The court erred in refusing the defendant's prayer to instruct the jury that the plaintiff having sworn that by virtue of said contract of 5 March, 1908, she had charged the defendant 8 per cent per annum on said loan, and that pursuant to said contract the defendant had paid the plaintiff up to the date on which the plaintiff admits the payment of $500 in cash on 9 May, 1916, the sum of $1,098, the loan as a matter of law bore no interest, and that the defendant had overpaid the plaintiff. And further, that all payments made by the defendant to the plaintiff by reason of said loan were in law applied on the principal; and further, that the note of $500 sued on in this action, according to the plaintiff's statement, represents in its entirety illegal and usurious interest on the original loan, and the defendant having overpaid the original debt, which in law bore no interest, the note now sued on, being for illegal interest on said original loan, the same is void, and that the defendant having pleaded the statute, Rev., 1951, forbidding usury, the plaintiff is not entitled to recover, and further, that in no view of the case is the plaintiff entitled to recover, and if the jury believed the evidence of the plaintiff, it will answer the first issue "Yes"; the second issue, "In its entirety"; and the third issue, "Nothing."

The court refused the above instructions prayed by defendant, and charged the jury that a judgment having been rendered upon the original note, as above stated, the defendant was estopped to set up the defense of usury in this action. This was error both because the judgment did not pass upon the question whether there was usury or not, but the judgment was a consent judgment which is simply an agreement of the parties, and has no effect beyond such agreement. *Bank v. Comrs.,*

119 N. C., 226, where the subject of consent judgments is fully discussed and the Court says: "Consent judgments are in effect merely contracts of parties acknowledged in open court, and ordered to be recorded." Such judgment has the same effect exactly of a contract between the parties, and no more. And this agreement under which the new note for usurious interest was given has certainly no effect greater than if the usury had been paid in cash, and if paid in cash, the defendant was not only not estopped, but was entitled to recover back twice the amount of the interest paid.

Rev., 1951, provides: "The taking, receiving, reserving, or charging a greater rate of interest than 6 per cent per annum, either before or after the interest may accrue, when knowingly done, shall be a forfeiture of the entire interest which the note or other evidence of debt carries with it, or which has been agreed to be paid thereon. And in case a greater rate of interest has been paid, the person or his legal representatives or corporation by whom it has been paid, may recover back twice the amount of interest paid, in an action for debt."

If payment in cash had been made, the debtor, instead of being estopped, would have been entitled to recover back double the amount paid. Certainly, therefore, the plaintiff cannot recover on this note, which is given in lieu of cash, since the note on which usurious interest had been paid had been overpaid, after deducting the payments of interest and payment of $500 in cash at the time (9 May, 1916), when the note sued on was given.

In *Faison v. Grandy*, 126 N. C., 827, and cases there cited, the Court held: "A note tainted with usury retains the taint in the hands of a subsequent holder. The forfeiture of interest is the decree of the law, and therefore a note embracing a usurious consideration is void as against the maker, even in the hands of a purchaser before maturity for value and without notice." In the present case the transaction is between the same parties, and the alleged renewal note is liable to the same defenses as if the original note was still outstanding.

This note in its entirety is a promise to pay interest, and void by virtue of the usury statute, there being nothing due upon the original note at the time this note was given.

In *Riley v. Sears*, 154 N. C., 517, the Court said: "In its practical operation, and as a matter of fact, the lender in very little over two years from the time the repayment was to begin, received back his $12,000, and in addition $2,627; so that, if this was a loan, as the parties termed it, he had already received, when these notes now sued on were given, the principal sum and nearly twice the amount of interest allowed by law. These notes, therefore, being given for an additional amount claimed, are based entirely on a usurious consideration, and no recovery

43—179

thereon can be had. *Faison v. Grandy,* 126 N. C., 827, and *Ward v. Sugg,* 113 N. C., 489." The present case exactly "on all fours."

The above authority is directly in point, for, according to the plaintiff's own statement, the note sued on in its entirety represents an additional amount, which in its entirety is for usury. The law applied the payments made for the seven years on the principal, since under the statute the note bore no interest, and the additional sum of $500 paid in cash overpaid the note. The note now sued on was given without consideration, and in its entirety represents the illegal interest, and the court should so have instructed the jury.

According to the law as laid down in *Ward v. Sugg,* 113 N. C., 489, the note in question is not only void, and no recovery can be had thereon, but even if this note had been endorsed to an innocent holder in due course it would have been void. No agreement of the parties, whether recorded as a consent judgment or otherwise, could change this. *Ward v. Sugg, supra,* has been followed and approved in many cases cited in the Anno. Ed.

In *Covington v. Threadgill,* 88 N. C., 186, it was held that "A contract made in violation of penal statutes is illegal and will not be enforced by the courts, and where such contract furnishes the consideration of another promise the latter will also be deemed illegal, even though it may be partially supported by other and legal considerations." In this case there was no other consideration than the original illegal consideration, and the note is held not by an innocent party taking before maturity and for value, but is made between the original parties.

The illegality of usury cannot be waived by the agreement of the parties, not even by payment, and a consent judgment cannot be an estoppel when the agreement itself continues and renews the original illegal contract.

The former action having been merely a consent judgment dismissing the action, cannot be an estoppel on the defendant against whom it adjudged nothing, even if it could be held an estoppel on the plaintiff.

WALKER, J., concurs in dissent.